# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**KEVIN BALL,**
**Claimant Below, Petitioner**

**FILED**

**November 2, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 18-0432** (BOR Appeal No. 2052294)
                    (Claim No. 2016018829)

**WEST FORK COAL, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kevin Ball, by John H. Shumate Jr., his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. West Fork Coal, LLC, by Patricia E. McEnteer, its attorney, filed a timely response.

The issue on appeal is the addition of an additional condition to the claim and medical benefits. The claims administrator denied the addition of bilateral cubital tunnel syndrome to the claim on May 10, 2017. On June 22, 2017, it denied authorization of carpal tunnel syndrome surgery. The Office of Judges affirmed the May 10, 2017, decision and reversed the June 22, 2017, the decision in its October 23, 2017, Order. The Order was affirmed by the Board of Review on April 20, 2018. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Ball, a heavy equipment operator, alleges that he developed cubital tunnel syndrome in the course of and resulting from his employment. On July 16, 2015, Yogesh Chand, M.D., performed an independent medical evaluation in which he noted that Mr. Ball was diagnosed with carpal tunnel syndrome in 2011. He underwent surgery in 2013. He was also diagnosed with cubital tunnel syndrome, but it has not been held compensable. Dr. Chand diagnosed residual bilateral carpal tunnel syndrome and tardy ulnar palsy of both elbows. Dr. Chand opined

1

that Mr. Ball has cubital tunnel syndrome and recommended another EMG. He opined that both the carpal and cubital tunnel syndromes are compensable and stated that he was unsure as to why it was not held compensable.

In a December 1, 2015, report of occupational injury or disease, Mr. Ball stated that he sustained injuries to both elbows in the form of tardy ulnar palsy/cubital tunnel syndrome. He alleges the condition arose as a result of repetitive use of the elbows while operating heavy equipment that was exposed to severe vibration. The physician's section was completed by Syed Zahir, M.D. Dr. Zahir diagnosed bilateral cubital tunnel syndrome. A treatment note by Dr. Zahir that same day indicates Mr. Ball had experienced pain and numbness in both hands as well as elbow pain for the previous three to four years. He worked as a dozer operator for twenty years. Dr. Zahir found that Mr. Ball had bilateral carpal and cubital tunnel syndrome and would require surgery for both conditions. On July 18, 2016, the claim was held compensable for recurrent carpal tunnel syndrome.

On October 7, 2016, Dr. Zahir noted that Mr. Ball still had pain in his hands and had been developing more weakness. Dr. Zahir diagnosed bilateral carpal tunnel syndrome and recurrent synovitis flexor tendon with cubital tunnel syndrome. He recommended another EMG. The EMG was performed on December 14, 2016, and was interpreted by Barry Vaught, M.D. It showed evidence of mild bilateral median neuropathy at the wrists consistent with mild bilateral carpal tunnel syndrome. It also revealed no evidence of ulnar neuropathy. On February 28, 2017, Dr. Zahir noted that the EMG showed mild carpal tunnel syndrome but Mr. Ball had a lot of symptoms in the hands. Though he had elbow symptoms, the EMG did not show evidence of cubital tunnel syndrome. Dr. Zahir's diagnosis remained the same. He stated that MR. Ball would undergo carpal tunnel surgery and requested authorization.

In a February 8, 2017, supplemental report, Prasadarao Mukkamala, M.D., indicated that he evaluated Mr. Ball in 2011 for bilateral carpal tunnel syndrome. He noted that Mr. Ball had filed a new claim for carpal and cubital tunnel syndrome and had undergone carpal tunnel surgeries in February and March of 2013. Dr. Mukkamala stated that he had reviewed the file, the evaluation by Dr. Chand, and Mr. Ball's job duties. He opined that the cubital tunnel syndrome is not causally related to Mr. Ball's occupational duties.

In a second supplemental report dated February 14, 2017, Dr. Mukkamala stated that there is no objective evidence of bilateral cubital tunnel syndrome in this case. He opined that if Mr. Ball does have cubital tunnel syndrome, it is not work-related. He stated that he reviewed the Musculoskeletal Disorders and Workplace Factors published by the National Institute for Occupational Safety and Health and it does not even mention cubital tunnel syndrome as work related. Dr. Mukkamala also reviewed the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), which concluded that there has been no evidence of a causal relationship between cubital tunnel syndrome and employment duties demonstrated in medical literature. There was some evidence that forceful repetition was a risk factor for the condition. There was insufficient evidence for vibration, highly repetitive work alone, forceful work, or awkward postures. There was a strong correlation between cubital tunnel

syndrome and age, as prevalence of the disease increases with age. Dr. Mukkamala ultimately concluded that the cubital tunnel syndrome is not related to Mr. Ball's occupational duties.

Paul Bachwitt, M.D., performed an independent medical evaluation on June 14, 2017, in which he noted that Mr. Ball has previously had carpal tunnel surgery in February and March of 2013. Dr. Bachwitt examined Mr. Ball in June of 2013 and found that he had reached maximum medical improvement. In July of 2015, Mr. Ball was examined by Dr. Chand who found that he had residual carpal tunnel syndrome in both wrists. Dr. Bachwitt stated that he examined Mr. Ball on November 10, 2015, and found that he needed a repeat EMG. Dr. Bachwitt opined that Mr. Ball does not need carpal tunnel surgery and that he does not put forth credible effort on examination. Dr. Bachwitt also opined that Mr. Ball does not have cubital tunnel syndrome.

Dr. Zahir completed an affidavit of medical necessity on August 17, 2017, in which he asserted that Mr. Ball requires carpal tunnel surgery on his right hand. He opined that it would help with the chronic pain, paresthesia, swelling, and limited range of motion. Dr. Zahir also stated that the condition is directly related to Mr. Ball's work duties.

The claims administrator denied the addition of bilateral cubital tunnel syndrome to the claim on May 10, 2017. On June 22, 2017, it denied authorization of surgery for carpal tunnel syndrome. The Office of Judges affirmed the denial of the addition of bilateral cubital tunnel syndrome to the claim and reversed the denial of authorization of carpal tunnel surgery in its October 23, 2017, Order.

Regarding the addition of cubital tunnel syndrome to the claim, the Office of Judges found that in July of 2015, Dr. Chand noted in his report that he had diagnosed bilateral carpal tunnel syndrome in 2011 based on an EMG. That EMG also showed mild cubital tunnel syndrome. Dr. Chand diagnosed carpal and cubital tunnel syndrome. He asserted that both conditions should be held compensable. The Office of Judges found that Mr. Ball underwent a new EMG on December 14, 2016, that showed no evidence for ulnar neuropathy (cubital tunnel syndrome) but Dr. Zahir still diagnosed cubital tunnel syndrome. The Office of Judges noted that Dr. Mukkamala opined in his February 14, 2017, report that there is no credible, objective evidence of cubital tunnel syndrome in this case. He further opined that if Mr. Ball does have cubital tunnel syndrome, it is not work-related. Dr. Bachwitt stated in his June 14, 2017, report that there is no evidence of ulnar neuropathy and opined that Mr. Ball does not have cubital tunnel syndrome. The Office of Judges concluded that the preponderance of the evidence indicates Mr. Ball does not have cubital tunnel syndrome.

The Office of Judges found that the request for authorization of carpal tunnel surgery should be authorized. Dr. Zahir reviewed the EMG, examined Mr. Ball on multiple occasions, and concluded that he has carpal tunnel syndrome. He recommended surgery to treat the condition, specifying that it would relieve the compression of the median nerve and correct the paresthesia, pain, swelling, and limited range of motion Mr. Ball is experiencing. Further, Dr. Zahir opined that the condition was work-related and that he would greatly benefit from the surgery. Dr. Bachwitt's opinion was found to be less reliable than that of Dr. Zahir. Dr. Bachwitt recommended denying the surgery because he felt Mr. Ball was not giving full effort during

examination. The Office of Judges found Dr. Zahir's opinion to be more persuasive. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on April 20, 2018.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The evidence indicates Mr. Ball does not have cubital tunnel syndrome. Specifically, the December 14, 2016, EMG showed no evidence of cubital tunnel syndrome. The claim has been held compensable for carpal tunnel syndrome, and the Office of Judges and Board of Review did not err in relying on the opinion of Dr. Zahir and authorizing surgery for the condition.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:**  November 2, 2018

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.

4